## HOULTON SAV. BANK et al. v. AMERICAN LAUNDRY MACHINERY CO.

### No. 55.

District Court, D. Maine, N. D.

Dec. 13, 1934.

See, also, 7 F. Supp. 858.

Bernard Archibald, of Houlton, Me., for plaintiffs.

J. Frederic Burns, of Houlton, Me., Harold C. Mendelson, of New York City, and William F. Merrill, of Skowhegan, Me., for defendant.

PETERS, District Judge.

This is a bill in equity asking for an injunction, heard upon bill, answer, and proof. It involves the ownership of certain machines used for laundry purposes which were placed in a hotel by the Aroostook.

Hotels, Inc., mortgagor in real estate mortgages held by the plaintiffs covering the hotel. It is claimed by the plaintiffs that the machines, when placed in the hotel building, lost their character of personal property and became a part of the real estate. The bill was brought to prevent a threatened removal of the machines by the defendant who claimed them under a conditional sales contract with the hotel company.

I find the following facts: In November, 1930, the defendant, hereinafter referred to as the laundry company, sold to the Aroostook Hotels, Inc., hereinafter referred to as the hotel company, the machines in question, comprising what is described as a heavy duty wood washer, a solid curb extractor, a return apron flat work ironer, a junior type drying tumbler, a galvanized iron soap tank, a copper heat-retaining starch cooker with handle-raising cover, a flat work folding table complete with iron legs, a galvanized iron metallic truck tub, and two improved iron base ironing boards with undersleeve boards, single arm suspension brackets, table mounting type; with some appurtenances; some machines being described as motor driven.

These were stock machines which could be used wherever desired, shipped knocked down or complete as required, and removable in the same way. They were not made for use in any particular building. Each item was equally adaptable for use wherever such machines are required. None of the items lost its identity in the connections made with the building or its appurtenances. A laundry equipment is not a necessary adjunct to a hotel. The room in which the laundry was set up in this case could as well be used for other purposes.

The contract of sale of these chattels involved the sum of about $6,500, and by a written contract between the parties, dated November 26, 1930, and recorded November 28, 1930, in the town records of Houlton, the title to the articles referred to was reserved in the laundry company until certain payments were made. The time of the delivery to the hotel of the machines is not definitely fixed, but they were all installed in the basement by the 27th of December, 1930, and had been delivered some two weeks or more before that.

Of the two mortgages under which the plaintiffs claim title, one ran directly to them dated December 9, 1930, recorded the same day in Aroostook county registry of deeds, and the other given to Dunn Furniture Company, dated February 26, 1931, recorded on the day of its date in the same registry, and later assigned to the plaintiffs. The first mortgage simply describes a lot of land in Houlton without mentioning buildings, except by the reference, "This property is now known as the new site of the Northland Hotel." The second mortgage was made subject to the first mortgage and describes the property as, "Now being known as the Northland Hotel property." There is no mention of machinery or fixtures in either mortgage. The construction of the building was being completed and it was opened as a hotel the last of December, 1930.

Payments due from the hotel company to the laundry company, under the conditional sales contract, not being made in accordance with its terms, the laundry company attempted to take out the articles of machinery described in its contract, whereupon the plaintiffs sought an injunction, alleging that the laundry equipment referred to constituted permanent fixtures, the removal of which, as threatened by the laundry company, would cause irreparable injury to the estate necessitating the tearing down of partitions, etc.

I find that the plaintiffs are mistaken in their idea that the removal of the laundry equipment would necessitate any injury to the building. It was set on a concrete floor in the basement of the hotel. Some of the heavier machines were steadied by their own weight, others had lead pads under the legs or supports. In some cases holes were driven into the concrete floor into which were pushed metal sleeves with ordinary lag screws screwed into the metal sleeves to hold the machines immovable; but this connection could be readily broken with no damage. In all cases it is a small matter, on taking the machines away, to leave the floor as before. Some of the machines had steam or electrical connections and there were connections with hot and cold water pipes. In all such cases of pipes the unions could be easily disconnected, and plugs inserted.

In breaking the electrical connections, where there were any, removal necessitated one of the conduits being opened and the wires taken out. This could be done without damage, and other machines could be used with the same connections. It is not necessary to remove any partitions or any part of the building in order to remove the machines, some of which can go out as they are and others can be removed by being taken apart and removed in sections. Removal would not damage the machines.

## Conclusions of Law.

As was said by the court in Lawyers' Mortg. Corporation v. Paramount Laundries, 279 Mass. 314, 181 N. E. 262, 263—a case on all fours with the present one—the issue whether the machines in question became a part of the realty covered by the mortgages held by the plaintiffs is a mixed question of law and fact. "The machinery was of such a character that the intention with which it was installed upon and attached to the real estate becomes an important if not the controlling factor." This is the rule in Maine as well as in Massachusetts. Hayford v. Wentworth, 97 Me. 347, 54 A. 940, 941. Also, as stated by Judge Emery, in the case last above mentioned, "An evident corollary of the modern rule thus established is that the burden of showing the existence of these requisites for merger, including the intention, is upon the party claiming the chattel to have become merged in the realty." I do not consider that the plaintiff has sustained that burden. On the contrary, the whole situation, including the character of the articles in question and the fact that they were mortgaged as personal property, leads me to the conclusion that the owner did not consider or intend them to be real estate. As to a chattel mortgage being evidence of intention in such a case, see 26 C. J. 728; Ames v. Trenton Brewing Co., 56 N. J. Eq. 309, 38 A. 858; and especially Mark Duntz, Trustee, etc., v. Granger Brewing Co., 41 Misc. 177, 83 N. Y. S. 957, affirmed 96 App. Div. 631, 89 N. Y. S. 1103, affirmed 184 N. Y. 595, 77 N. E. 1186.

Such being the case and the articles in question being personal property so far as the hotel company and the laundry company are concerned, has anything occurred to prevent the laundry company asserting its claim under its chattel mortgage or what amounts to that? I think not. The plaintiffs claim that it was the duty of the laundry company to secure the consent of the plaintiffs as real estate mortgagees that the laundry machinery should be or remain personal property. But when the laundry company made its contract with the hotel company, there were no mortgages of the real estate. The contract was made with the sole owner.

If the articles in question, under all the circumstances, with the intention of the owner, as a matter of fact and of law, had changed their character from chattels personal to chattels real, there is authority, as stated by the attorney for the plaintiffs, to the effect that the mortgagees of the real estate could have held them as against a prior chattel mortgagee. The case relied upon is Pierce v. George, 108 Mass. 78, 11 Am. Rep. 310, and some other cases referred to therein; but the distinguishing feature in that case is that, as to such articles as were there held to be covered by the lien of the real estate mortgage, it was found that they were affixed to the building in such a way as to become chattels real. As to other articles, like lathes, grindstones, tack-machines, portable forges, etc., which were held not to be fixtures and a part of the real estate, judgment was given for the chattel mortgagee.

In the case hereinabove referred to, also in Massachusetts, of Lawyers' Mortgage Inv. Co. v. Paramount Laundries, 279 Mass. 314, 181 N. E. 262, a very recent one, the court gave judgment for the chattel mortgagee against a subsequent mortgagee of the real estate on the ground that the situation did not disclose facts making the chattels part of the realty.

The rule in Maine, as laid down in the case of Vorsec v. Gilkey, 132 Me. 311, 170 A. 722, also much relied upon by the plaintiffs, is the same as the rule in Massachusetts to the effect that a contract between a mortgagor of real estate and a third person attempting to preserve the chattel character of the property added to the real estate as an improvement during the life of the mortgage thereon is ineffective against the mortgagee unless he is a party to the transaction. This is undoubtedly the law, but has no application here. In the instant case, the conditional sales contract was made before the real estate mortgages and the personal property involved was never added to the real estate as an improvement, but began and remained personal in its nature under the rules laid down both in Maine and Massachusetts, on the basis of the facts as I have found them. Mark Duntz, Trustee, v. Granger Brewing Co., supra.

The trend of judicial opinion has been against a merger of personal property with real estate under similar circumstances. Holt v. Henley, 232 U. S. 637, 34 S. Ct. 459, 58 L. Ed. 767; Detroit Steel Co. v. Sisterville Brew. Co., 233 U. S. 712, 34 S. Ct. 753, 58 L. Ed. 1166; Hayford v. Wentworth, 97 Me. 347, 54 A. 940.

The plaintiffs' bill must be dismissed with costs. A decree will be entered accordingly.